UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ORLANDO TORRES,


                                    Plaintiff,

                                                        DECISION AND ORDER

                                                        07-CV-6235L


                    v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,


                                    Defendant.

_____


**INTRODUCTION**

This is an action brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to review the final

determination of the Commissioner of Social Security ("the Commissioner") that Orlando Torres

("plaintiff") is not disabled under the Social Security Act ("the Act") and, therefore, is not entitled

to supplemental security income and disability insurance benefits.  The parties have both filed

motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). (Dkts. #7, #10).

For the reasons discussed below, the Commissioner's motion is granted, the plaintiff's

motion is denied, and plaintiff's complaint is dismissed.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff filed a protective application for supplemental security income on March 4, 2004,

claiming disability since February 2, 2004 on the basis of a back impairment, heart condition and

hypertension, which was denied. (T. 159-161). Plaintiff also protectively applied for Social Security disability insurance benefits on May 11, 2004, which was also denied. (T. 42-44). Plaintiff requested a hearing, which was held via videoconference on August 9, 2006 before administrative law judge ("ALJ") Edward J. Banas.  (T. 165-188).  On August 31, 2006, ALJ Banas issued a determination that plaintiff was not disabled.  (R. 7-12).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on March 5, 2007. (T. 3-6).

Plaintiff's medical history includes the following:  On March 19, 2004, treating physician Dr. Robert Molinari found that plaintiff was physically fit.  His gait was slow, but steady, and straight leg raising was within normal limits.  However, diminished sensation was noted in portions of plaintiff's back, his range of motion was reduced, and plaintiff reported severe back pain radiating down his legs to his feet, which had rendered him disabled and unable to work for several weeks. Dr. Molinari ordered an MRI to assess plaintiff's possible need for spinal surgery. (T. 109-110, 115-116).

On March 22, 2004, an MRI of plaintiff's lumbar spine showed grade 2 spondylolisthesis (displacement of the 50% of the vertebra or vertebral column) of the L5 to S1, as well as bilateral neural foraminal encroachment, all secondary to bilateral spondylosis (spinal degeneration and deformity of the joints of two or more vertebrae, a common result of aging).  There was mild spinal stenosis (compression of the spinal cord and nerves) at the L1-L2 level. (T. 106-107).  On April 29, 2004, X-rays of plaintiff's lumbar spine confirmed grade 2 L5-S1 isthmic spondylolisthesis, with bone-on-bone deformity throughout the disc space.  (T. 114).

On June 14, 2004, plaintiff underwent spinal surgery with posterior fusion of L5-S1. (T. 103, 126-127). Postoperative examinations and a follow-up with Dr. Molinari on July 6, 2004, showed that plaintiff's condition was much improved. He was now neurologically normal with respect to motor and sensory functions in his lower extremities, with normal reflexes in his knees and ankles. (T. 98, 126-127). However, plaintiff still experienced "some back pain," and his prescription for Vicodin, a narcotic painkiller, was refilled. (T. 98).

On September 16, 2004, plaintiff's motor strength in his lower extremities rated 5/5. Sensation and reflexes were within normal limits, and plaintiff's back flexibility was found to be "excellent." (T. 136, 140).

On December 15, 2004, plaintiff presented to Dr. Molinari with complaints of low back pain and occasional leg pain. He had been taking Neurontin, a pain reliever, to aid sleeping, but was instructed to discontinue it due to mental side effects. (T. 135).

At several subsequent examinations through May 5, 2005, plaintiff's motor strength, gait, reflexes, and sensation in his lower extremities, as well as X-rays to identify changes in lumbar spinal alignment, were all normal and unchanged. (T. 134-140). However, plaintiff continued to complain of activity-related back pain, for which he was prescribed the painkiller Ultram. (T. 134).

On December 19, 2005, treating physician Dr. Abigail DrVries noted that although plaintiff had undergone an angioplasty in 1999, he had no present reports of chest pain or shortness of breath. Plaintiff complained of depression, but was alert, oriented, and not suicidal. Blood pressure was normal, lungs were clear and plaintiff had no edema. Dr. DeVries' impressions included history of coronary artery disease, hypertension, chronic back pain, depression and tobacco abuse. (T. 149).

At a subsequent visit on January 10, 2006, Dr. DeVries made similar findings, and noted that the plaintiff's back was mildly tender to palpation over the lumbar spine, although gait was normal. (T. 148). Plaintiff continued to complain of pain with prolonged sitting and/or lifting, for which he was taking Cyclobenzaprine, a muscle relaxant, and Motrin. Dr. DeVries cleared plaintiff to return to chef school, noting with respect to plaintiff's chronic back pain that "[h]e will likely have some restrictions on school but I do not think that should get in the way of his training." *Id*.

In a medical assessment dated January 16, 2006, Dr. DeVries diagnosed chronic back pain with status post fusion, coronary artery disease, depression and elevated cholesterol. She opined that plaintiff was very limited with respect to pushing, pulling and bending, and was moderately limited with respect to sitting, lifting and carrying. Plaintiff's ability to walk, stand, see, hear, speak, use his hands and climb was unlimited, as were plaintiff's mental functions. Dr. DeVries recommended that plaintiff avoid bending, prolonged sitting, and lifting more than ten pounds. (T. 156-157).

In a letter dated August 2, 2006, plaintiff's psychotherapist, Dr. David Comisar, stated that plaintiff had been receiving psychiatric treatment since December 12, 2005. Plaintiff was diagnosed with depressive disorder, and received individual psychotherapy as well as medication. Dr. Comisar noted that plaintiff had benefitted from this treatment, was mentally stable, had learned coping strategies, and received needed support. (T. 158).

In a second medical assessment dated September 26, 2006, which was submitted to the Appeals Council following plaintiff's hearing, Dr. DeVries opined that plaintiff was very limited with respect to standing, sitting, lifting and carrying. He was moderately limited in his ability to walk, climb, push, pull and bend, and had no limitations concerning hearing, seeing, speaking, using

his hands, or functioning mentally.  (T. 162).  Dr. DeVries recommended that plaintiff avoid

bending, sitting or walking continuously for more than 30 minutes, standing for more than 20

minutes, or lifting more than 10 pounds.  (T. 163).

At his hearing on August 9, 2006, plaintiff testified that he was born in Puerto Rico in

September 1958, and moved to the mainland United States in 1982.  (T. 169-171).  He studied

English and obtained a high school diploma.  *Id*.  His past relevant work includes employment in a

furniture warehouse, as a metal finisher manufacturing small bombs for the U.S. Army, and as a

dishwasher.  (T. 169-174).  With respect to his daily activities, plaintiff testified that he cooked, read

and watched television.  (T. 177-178).

Vocational expert ("VE") Diane Sims testified that plaintiff's former positions as a

dishwasher, warehouse worker and metal finisher were variously classified as unskilled medium and

unskilled heavy work.  (T. 180).  The ALJ asked Sims whether jobs existed in the national economy

for a person of plaintiff's age, education and work history, with the residual functional capacity

("RFC") to perform simple, routine light work, with the option to sit or stand as needed, and which

did not require a great deal of concentration.  (T. 181).  Sims testified that such an individual could

work in the light, unskilled jobs of hand packer, or unskilled assembler.  (T. 182).

## DISCUSSION

### I.      Standard for Determining Disability

Under the Social Security Act ("the Act"), a person is considered disabled when he is unable

"to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  A physical or mental impairment (or combination of impairments) is disabling if it is of such severity that a person "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ."  *Id.* at §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled within the meaning of the Act, the ALJ proceeds through a five-step sequential evaluation.  *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity.  *See* 20 CFR §404.1520(b).  If so, the claimant is not disabled.  If not, analysis proceeds to step two.

At step two, the ALJ must determine whether the claimant has an impairment, or combination of impairments, that is "severe," e.g., that imposes significant restrictions on the claimant's ability to perform basic work activities.  20 CFR §404.1520(c).  If not, the analysis concludes with a finding of "not disabled."  If so, the ALJ continues to step three.

At step three, the ALJ examines whether the claimant's impairment meets or equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4.  If the claimant's impairment meets or medically equals the criteria of a listing and meets the durational requirement (20 CFR §404.1509), the claimant is disabled.  If not, analysis proceeds to step four.

At step four, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or metal work activities on a sustained basis notwithstanding limitations for the claimant's collective impairments.  *See* 20 CFR §404.1520(e), (f).  Then, the ALJ

determines whether the claimant's RFC permits him to perform the requirements of his past relevant work. If so, the claimant is not disabled. If not, analysis proceeds to the fifth and final step.

The claimant bears the burden of proof throughout steps one through four. However, at the fifth step, the burden shifts to the Commissioner to show that the claimant is not disabled, by presenting evidence demonstrating that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir.1999), *quoting Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir.1986). *See* 20 CFR §404.1560(c).

## II.     Standard of Review

The Commissioner's decision that plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. 42 U.S.C. § 405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir.2002); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir.1991). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938). "The Court carefully considers the whole record, examining evidence from both sides 'because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" *Tejada*, 167 F.3d at 774, *quoting Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir.1997). Still, "it is not the function of a reviewing court to decide *de novo* whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not

substitute our judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d

Cir.2002).

### III.   The ALJ's Decision

In a lengthy and thorough opinion, the ALJ found at step one that the claimant had not

engaged in substantial gainful activity since February 2, 2004. (T. 17).  The ALJ found at steps two

and three that plaintiff had a severe impairment consisting of a spinal injury and hypertensive

vascular disease, but that these conditions did not meet or equal any listed impairment.  The ALJ

noted that although plaintiff also alleged depression, the record indicated only mild symptoms and

reflected improvement of those symptoms through psychiatric treatment, and therefore found that

plaintiff's depression did not constitute or contribute to a severe impairment. (Tr. 17-20).  The ALJ

found at step four that plaintiff lacked the residual functional capacity ("RFC") to perform his past

relevant work, but retained the RFC to perform simple, routine light work with a sit/stand option,

lifting up to 20 pounds, bending occasionally, pushing and pulling occasionally, and employing

manual dexterity. (T. 19).  Based on testimony from the VE, the ALJ concluded at step five that

plaintiff was not disabled because he could perform other jobs found in significant numbers within

the national economy, including the positions of hand packer and unskilled assembler. (T. 22).

The Commissioner argues that substantial evidence in the record exists to support the ALJ's

decision that plaintiff is able to perform other work in the national economy.  Plaintiff, on the other

hand, argues that the ALJ's decision is based upon legal error. Plaintiff claims, *inter alia*, that the

ALJ erred at step two when he determined that plaintiff's depression was not a severe impairment,

and at step four when he rejected the opinion of plaintiff's treating physician with respect to his 10

pound lifting limitation, determining that plaintiff was capable of lifting up to 20 pounds, and failed to fully credit plaintiff's subjective complaints of pain.

Upon review, I find that the ALJ's determination is supported by substantial evidence in the record. With respect to plaintiff's depression, the fact that plaintiff's therapist noted that plaintiff nonetheless "continues to struggle with depression" does not, by itself, suggest that plaintiff's depression severely impaired his performance of any major life activity. Indeed, the record is clear that while plaintiff's underlying depression may have been ongoing, plaintiff received regular psychiatric and pharmacologic therapy, and "benefitted from psychiatric treatment to maintain his stability, learn coping strategies and get needed support." (Tr. 18, 158). Plaintiff's treating physician, Dr. DeVries, repeatedly noted that plaintiff did not suffer from any mental impairments. (T. 151, 155). Plaintiff did not offer any evidence whatsoever, such as records regarding his ongoing therapy, which would support a conclusion that his psychiatric treatment was ineffective, or that he became or remained severely impaired despite such treatment. As such, I find that the ALJ properly concluded that plaintiff's depression did not contribute to or constitute a severe impairment.

Plaintiff also asserts that the ALJ failed to afford the requisite deference to the opinions of his treating physician, Dr. DeVries. It is well-settled that "the medical opinion of a claimant's treating physician is given controlling weight *if it is well supported by medical findings and not inconsistent with other substantial record evidence." Shaw v. Carter*, 221 F.3d 126, 134 (2d Cir. 2000) (emphasis added). In determining what weight to give a treating physician's opinion, the Commissioner must consider: (1) the length, nature and extent of the treatment relationship; (2) the frequency of examination; (3) the evidence presented to support the treating physician's opinion; (4)

whether the opinion is consistent with the record as whole; and (5) whether the opinion is offered

by a specialist.  20 C.F.R. § 404.1527(d).  Further, the ALJ must articulate his reasons for assigning

the weight that he does accord to a treating physician's opinion.  *Shaw*, 221 F.3d at 134; *see also*

*Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("[f]ailure to provide good reasons for not crediting

the opinion of a claimant's treating physician is a ground for remand.") (internal quotations omitted).

In rejecting Dr. DeVries' assessment of plaintiff's lifting and carrying restrictions, the ALJ

found that plaintiff's physical examination records simply did not support Dr. DeVries' view.

Specifically, no medical records evinced chest pain, shortness of breath, weakness, edema, decreased

spinal flexibility, strength sensation, reflexes, gait, or other bases for a lifting restriction, other than

plaintiff's reports of pain with prolonged physical activities including lifting. (T. 21).  The ALJ also

noted that plaintiff required only routine office visits to his physician and conservative post-operative

treatment following the spinal fusion surgery, and that there have been no significant increases or

changes in his prescribed medications which might signal an uncontrolled condition.  *Id*.  Because

Dr. DeVries' assessments of plaintiff's lifting capabilities were unsupported by objective medical

evidence of a related impairment, and because there is no evidence of physical degeneration that

would explain the dramatic changes and additional limitations which were noted in Dr. DeVries'

second assessment, I find that the ALJ properly rejected them as unsupported and inconsistent with

the record.

Plaintiff also urges that his alleged disability is borne out by additional evidence which he

has submitted in support of this motion, but which was not available to the ALJ, and was not

submitted to the Appeals Council.  Specifically, plaintiff relies upon a third RFC assessment from

Dr. DeVries, dated September 26, 2006, and a pain limitation questionnaire dated February 20, 2007. These documents opine that plaintiff is now limited to lifting and carrying *less* than ten pounds, can stand or walk for at least two hours in an 8-hour workday with a sit/stand option, is limited by back pain to a less-than-full range of pushing and pulling, and is further limited in his ability to balance, kneel, crouch, crawl, stoop, extend his arms to reach, and function in cold temperatures. Dr. DeVries opines that the pain caused by plaintiff's spondylolisthesis prevents him from performing his past work, creates "good days and bad days," will likely cause him to miss at least two days of work per month, is likely to continue for a year or more, and will negatively impact his productivity on "bad days" by more than 20-25%. (Dkt. #11-2).

Assuming *arguendo* that the plaintiff's additional submissions should be considered by the Court, once again, there is no objective medical support in the record for a finding that plaintiff's RFC was as limited as Dr. DeVries indicated in her previous RFC assessments, let alone for a finding that plaintiff's condition has spontaneously and dramatically degenerated in the meantime. Accordingly, the newly-submitted documentation is insufficient to erode the substantial evidence supporting the ALJ's determination that plaintiff is not disabled.

Finally, plaintiff alleges that the ALJ failed to properly credit plaintiff's subjective testimony concerning the effect of his impairments on his RFC. In assessing a claimant's credibility, an ALJ must consider the objective medical evidence, as well as evidence concerning: (1) the plaintiff's daily activities; (2) the location, duration, frequency and intensity of the plaintiff's pain or other symptoms; (3) factors that precipitate or aggravate the symptoms; (4) the type, dosage, effectiveness and side effects of plaintiff's medications; (5) other means of pain relief received by the plaintiff;

(6) non-treatment measures used by plaintiff for pain relief; and (7) any other factors concerning the individual's functional limitations and restrictions.  *See* 20 C.F.R. §§ 404.1529, 416.929.

At the hearing, plaintiff testified concerning a failed attempt at resuming work in November 2005, wherein he had to abandon a position loading and unloading a restaurant dishwasher due to having "a lot of pain in [his] back and [his] leg." (T. 175).  Plaintiff also testified that his depression prevented him from working in that it caused him to have a "nasty attitude" and made him "easy to get to." (T. 176-177).  With respect to his activities of daily living, plaintiff testified that he is able to bathe himself and take care of "most" of his personal needs, although less so in hot weather, which aggravates his pain.  He does some cooking, and is able to negotiate trips up and down stairs to the second floor and basement of his home.  (T. 177-178).  He spends his days reading and watching television.  (T. 178).

Despite reporting some back pain during his attempt at dishwashing work and in hot weather and record evidence that plaintiff has been prescribed several pain medications and a muscle relaxant, plaintiff did not testify concerning these or any other methods of pain relief, or offer any evidence specifying the precise nature and extent of his alleged limitations due to pain.  Accordingly, I find that the ALJ properly concluded that while the plaintiff's medically determinable impairments could reasonably be expected to result in some level of pain or discomfort, plaintiff's references to debilitating back and leg pain appeared exaggerated in light of the objective medical evidence, and were inconsistent with the level of impairment that plaintiff has alleged.

**CONCLUSION**

Based on the foregoing, I find that the ALJ's finding that plaintiff is not disabled is supported by substantial evidence in the record.  The Commissioner's motion for judgment on the pleadings (Dkt. #7) is granted, and the final decision of the Commissioner is affirmed.  Plaintiff's motion for judgment on the pleadings (Dkt #10) is denied, and the complaint is dismissed.

IT IS SO ORDERED.


_____
DAVID G. LARIMER
United States District Judge


Dated: Rochester, New York
       May 5, 2008.